## GRAMMAR et ux. v. HESPERIAN BUILD-ING & SAVINGS ASS'N.

### No. 12950.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 24, 1934.

Rehearing Denied March 30, 1934.

J. T. Adams, of Gainesville, and Robt. H. Hopkins, of Denton, for appellants.

H. S. Holman and W. O. Davis, both of Gainesville, for appellee.

LATTIMORE, Justice.

This is on an appeal from a foreclosure of a contract lien upon appellant's homestead. Taking the facts most strongly against appellant, the case is: Appellant, a merchant, approached lumber company No. 1 to build a home for him upon an unimproved lot owned by him but incumbered by a vendor's lien. He had secured a promise of a loan in the sum of $3,000 from appellee when the building was completed. He agreed with lumber company No. 1 that he would execute to it a mechanic's lien for $3,000, but wanted a part of the materials to come from two other lumber yards in the town whose owners were customers of his, and that various mechanics owed him enough money to furnish all the labor and that he wanted them to do the labor and pay their indebtedness to him thereby, and that the balance of the purchase price of the lot must be included in the $3,000. This being agreed, appellant and his wife executed in proper form a mechanic's lien to said lumber company No. 1 in the sum of $3,000. The work was completed as per that understanding and in that manner.

The mechanic's lien and note was assigned to appellee. Appellee, at the request of appellant, paid the holder of the vendor's lien and issued its check to the lumber company No. 1 for $2,100, which was the total material bill for all three lumber companies. No. 1 cashed the check and issued its check to No. 2 for the balance over the account of No. 1, and No. 2 did likewise with reference to its account, and No. 3, which last lumber company being then paid, had an excess of $96, which was delivered to appellant. The labor cost was more than the amount of the vendor's lien plus the $96. Appellants have

twice renewed the debt secured by the original mechanic's lien and vendor's lien.

The Constitution, art. 16, § 50, protects the homestead from forced sale except for, among others, "work and material used in constructing improvements thereon," and allows such forced sale "only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead."

Article 5460, Rev. Civ. Statutes, provides in part: "It shall be necessary for the person or persons who furnish the material or perform the labor, before such material is furnished or such labor is performed, to make and enter into a contract in writing, setting forth the terms thereof, which shall be signed by the owner and his wife," etc.; further that, when same has been recorded, "same shall inure to the benefit of any and all persons who shall furnish material or labor thereon for such contractor or builder."

■ The holder of the vendor's lien was paid the unpaid balance of his lien by appellee at the request of appellant and with an intention on the part of both appellant and appellee that appellee should have a lien therefor on the identical property as security for the vendor's lien. The lien sued on in this case was the lien executed by appellant for that purpose and in part for the amount so paid. The lien is valid, therefore, to that extent upon the homestead.

■ As to the materials, it was not intended that the Constitution should prevent the construction of improvements on the homestead, but rather to protect to that extent the family acquiring same against mistakes, improvidence, carelessness, and fraud. The policy of our government is to encourage home acquisition and ownership. Manifestly, the mechanic's lien is not limited to him who physically delivers the building materials upon the lot. It extends to those who undertake to and do furnish through other persons such materials. That agency may include the owner himself. Downard v. National Loan & Inv. Co., 22 Tex. Civ. App. 570, 55 S. W. 981, is an excellent statement of this rule, typical of our lamented Chief Justice Conner.

The record does not set out the details of the delivery of the materials by lumber yards Nos. 2 and 3, but the facts are that No. 1, who held the lien, was paid for all and in turn paid Nos. 2 and 3 for their material which went into the homestead. It is a circumstance supporting the theory that lumber yards Nos. 2 and 3 furnished the lumber pursuant to an agreement with No. 1 that same should be furnished for No. 1 and that they looked to No. 1 for payment and not to appellant. It is our duty to place such reasonable construction on the facts as same will bear to support the judgment of the trial court. So regarded, appellee acquired from No. 1 a lien for which No. 1 had furnished face value (except the vendor's payment) in materials.

Likewise, if the mechanics performing the building had said to the builder, "pay our wages to the owner," this would not invalidate the lien given therefor, even though such agreement was made before the lien was signed.

The judgment is affirmed.

### On Motion for Rehearing.

■■ Appellants' motion for rehearing is also for certain findings of fact. We were not explicit in referring to "appellant," for in fact there were two appellants, husband and wife. The record does not show that Mrs. Grammar, wife of appellant D. T. Grammar, negotiated in person with the representatives of the lumber companies or of the appellee or made any statement to any of them other than that she did sign and acknowledge the mechanic's lien to the lumber company and the deeds of trust and extensions to appellee. In other respects the transactions were conducted with her husband. The husband is authorized to make contracts for the community estate without the consent of his wife, even though same be for improvements on the homestead. It is only when a contract is sought under which the homestead may be exposed to forced sale that the consent of the wife is required and that consent may be to a contract already executed by the husband.

The mechanic's lien to the lumber company was expressly intended by Mrs. Grammar to cover the debt to accrue from furnishing whatever was necessary to be furnished in labor other than that which Grammar could secure from his debtors, and in materials to complete the house, and also whatever was necessary "to clear the title" for the loan, and we conclude that Mrs. Grammar consented thereto. This necessarily includes the understanding had between Mr. Grammar and lumber company No. 1 that the lien would cover such materials as Mr. Grammar should have delivered through No. 2 and No. 3; the same being delivered for the benefit of No. 1.

The motion for rehearing is overruled.